## William R. Gregg
### v.
## Ulysses E. Fisher.

1.  Partnership—Power of one partner to bind the firm.—In ordinary commercial partnerships, each partner has the right to pledge the partnership property, or to borrow money and give notes for partnership purposes, in the firm name; and when credit is extended to a partnership within the scope of its business, it will bind all the partners, notwithstanding any secret arrangement they may have among themselves, unknown to those giving the credit.

2.  Partnership note—Presumption—Burden of proof.—A note or bill made by one partner in the name of the firm, will be presumed to have been made in the course of partnership dealings, and the burden of proof is upon him who seeks to impeach it, to show the contrary, and that such fact was within the knowledge of the payee.

3.  Misapplication of funds by one partner.—A misapplication, by one partner, of the funds borrowed, constitutes no defense to suit for payment of the note, unless it be shown that the plaintiff at the time he loaned the money had knowledge that the same was to be used for other than partnership purposes.

Appeal from the Circuit Court of Madison county; the Hon. William H. Snyder, Judge, presiding.

Mr. Levi Davis, Jr., for appellant; as to the power of one partner to borrow money, etc. for partnership purposes, cited Ulery v. Ginrich, 57 Ill. 531; Story on Partnership, § 102.

When credit is given to a firm within the scope of its business, all the partners will be bound, notwithstanding any secret understanding between them, which is unknown to those giving the credit: Story on Partnership, § 105; U. S. Bank v. Binney, 5 Mason, 176; Ethridge v. Binney, 9 Pick. 272; Winship v. Bank of United States, 5 Pet. 529; Buckner v. Lee, 8 Ga. 285; Michigan Bank v. Eldridge, 9 Wall. 544; Bush v. Crawford, 7 Bank Reg. 209.

A subsequent misapplication of the money by one partner, made without the knowledge of the lender, will not release the firm from liability: Wagner v. Freschl, 56 N. H. 495; Blodgett v. Weed, 119 Mass. 215; Warren v. French, 6 Allen, 317;

Hayward v. French, 12 Gray, 453; Emerson v. Harmon, 14 Me. 271; Church v. Sparrow, 5 Wend. 223; Onondaga Co. Bank v. DePuy, 17 Wend. 47.

A note made by one partner in the firm name will be presumed to have been made in the course of partnership dealings, and the burden is upon him who alleges the contrary to show it was not: Parsons on Bills, 128; Doty v. Bates, 11 Johns. 544; Whitaker v. Brown, 16 Wend. 505; Foster v. Andrews, 2 Penn. 160; Ensminger v. Marvin, 5 Blackf. 210; Knapp v. McBride, 7 Ala. 19; Thurston v. Lloyd, 4 Md. 283; Manning v. Hays, 6 Md. 5; Hamilton v. Summers, 12 B. Mon. 11; Thicknesse v. Bromilor, 2 Cr. & J. 425; Barrett v. Swan, 16 Me. 180; Bank of U. S. v. Binney, 5 Mason, 176; Miller v. Manice, 6 Hill, 114.

Mr. CHARLES P. WISE, for appellee; that the evidence did not sufficiently establish the loss of the notes, cited Dormandy v. State Bank, 2 Scam. 236; Palmer v. Logan, 3 Scam. 56; Rogers v. Miller, 3 Scam. 333; Mariner v. Saunders, 5 Gilm. 113; Rankin v. Crow, 19 Ill. 626.

The case in every aspect presents questions of fact which it was the province of the jury to decide, and their verdict should not be disturbed: Wiggins Ferry Co. v. Higgins, 72 Ill. 517.

ALLEN, J. This was an action of assumpsit, by appellant against appellee and Cyrus Gregg, partners, under the style of Fisher & Gregg, on two promissory notes executed in the firm name of Fisher & Gregg, to the order of appellant, each dated June 17th, 1872, and payable, respectively, in twenty and twenty-five days after date; one of them being for $275.00, and the other for $120.00. The third count contained the ordinary money counts, and under it appellant sought to recover back $150.00, advanced by him to defendants on a draft drawn on him in the firm name of Fisher & Gregg, and dated June 1st, 1872.

No service was had on the defendant Gregg, or appearance entered for him. Fisher appeared and filed his plea, denying that he executed the note, verified by his affidavit. He also pleaded the Statute of Limitations.

Upon the first plea plaintiff joined issue, and to the second replied that the "cause of action accrued within five years." Evidence was introduced by plaintiff showing the loss of the notes; also showing that defendant and Cyrus Gregg, at the time the notes were executed, were in partnership in selling drugs at Alton, Ill., under the name and style "Fisher & Gregg," from June, 1871, until August, 1872. That the store was managed by Gregg alone, Fisher taking no active part in the management. The evidence further shows that Gregg borrowed money for the firm at different times, and from different firms, for which he executed the firm paper; that in the spring of 1872 he borrowed $600 from Pearly & Woodman, gave the firm note for its payment, and that that note was afterwards taken up by defendant, and two notes executed in the firm name for it.

Benj. Sargent testifies that Fisher & Gregg borrowed money from First National Bank on two occasions, in 1871 and '72; notes each for $300; don't remember who got the money; one of these notes was paid by Fisher's check.

The plaintiff, Wm. Gregg, testifies that he loaned the money for which notes were executed to Cyrus Gregg, for the use of the firm of Fisher & Gregg, as he, Cyrus Gregg, said that he had before that time accepted two drafts drawn by the firm of Fisher & Gregg, and paid the money on them; that Fisher had thanked him for accepting these drafts; that he did not present notes to Fisher, though he had opportunities to do so. Cyrus Gregg was in the family of Fisher, and was having trouble, and he did not want to do it.

Wm. T. Evarts testified that he was in wholesale drug business at Alton in 1871 and '72. Often sold bills to Fisher & Gregg, for which he took their firm notes; had as many as 18 or 20 of their notes at different times; notes were executed by Gregg in firm name; knows that Fisher paid one of these notes.

Cyrus Gregg testified: "Notes sued on were given by me to raise money to be used in firm, and it was so used. Often borrowed money and gave firm notes for its payment whenever it was to be used in business of the firm; never gave firm notes

for money I owed individually; am son-in-law of defendant Fisher."

Defendant Fisher testified: "Was in partnership with Cyrus Gregg; did not allow Cyrus Gregg to borrow money or give firm notes; did pay one note in First National Bank, but did not want to do it."

Defendant then introduced cash book, or what purported to be cash book, kept by Gregg, in which certain charges and credits were entered to plaintiff, in which the money obtained on the two notes is not entered; never heard of these notes or drafts from Wm. Gregg. Cyrus Gregg's reputation for truth is bad—would not believe him under oath.

John H. Smith testified that in Spring of 1872, he loaned Cyrus Gregg, for the firm of Fisher & Gregg, $200; when due, Gregg could n't pay it, and refused to give firm notes for it; said Fisher had forbid him to do so.

Several witnesses testified to bad character of Cyrus Gregg for the truth.

The court gave the following instructions for defendant:

If the jury believe from the evidence, that the draft sued on in this suit, was due more than five years before the commencement of this suit, then the jury, under the pleadings in this case, must find as to such draft for the defendant.

If the jury believe from the evidence in this case, that the notes claimed to be lost and sued on in this case, were made by one C. M. Gregg, who signed the firm name of Fisher & Gregg to the same; but if they further believe from the evidence, that the said notes, if actually given, were given for borrowed money, and that C. M. Gregg, as a member of said firm of Fisher & Gregg, had no power or right to give the firm note for any such purpose, then the jury, as to such notes, must find for the defendants.

Upon this evidence and these instructions, the jury returned a verdict for defendant. A motion for new trial was overruled, and judgment on verdict for defendant.

In ordinary commercial partnerships (such as this one), each partner has a right to pledge the partnership property, or to borrow money for partnership purposes, to draw, negotiate,

accept or endorse bills of exchange and promissory notes or checks in the partnership name. Ulery v. Ginrich, 57 Ill. 531. The rule is also well settled, that when a credit is given to a firm within the scope of its business, whether the partnership be general or limited, it will bind all the partners, notwithstanding any secret arrangement they may have among themselves, which are unknown to those who give the credit. Story on Partnership, § 105.

Again, a bill or note made by one partner in the name of the firm, will be presumed to have been made in the course of partnership dealings; and if the other partners seek to avoid its payment, the burden of proof will lie upon them to show that it was given in a matter not relating to the partnership business, and that that fact was within the knowledge of the payee. Parsons on Bills, § 128.

Now let us apply these principles to the evidence in this case: It is shown by the evidence that Fisher & Gregg were partners in a drug establishment; that Gregg conducted the business; that he made the purchases and sales, made collections, borrowed money when necessary to carry on the business of the firm, and that so far as the public knew, was fully authorized to execute notes and draw bills and drafts in the firm name. That the partnership was to all intents and purposes, so far as the public were advised, an ordinary commercial partnership, with the rights and privileges and liabilities that attach or grow out of such a partnership. That while this firm was doing business, Gregg, the business manager, borrowed this money for the use of the firm, and executed the notes sued on. What is there in the evidence to contradict this? Fisher, defendant, admits the partnership; admits that Gregg borrowed money and executed notes in the name of the firm; admits that he paid some of the notes himself, but says that he " told Gregg that he must not borrow money, and must not use the firm name in giving notes and drawing bills, etc. Now, if, instead of contenting himself with saying this to his partner, he had informed the public and the men who were extending favors to the firm, that Gregg had no authority to borrow money and to execute notes in the firm name, he might have made his defense

available. It is true that defendant shows by one "Smith" that Gregg told him at one time that Fisher had ordered him not to give notes in the firm name; but Smith, so far as the evidence shows, is the only man outside the firm that had any notice of this secret reservation between the partners.

Then, so far as this evidence goes, neither this plaintiff nor any other individual or firm that extended favors to this firm, had any knowledge of such a restriction on Gregg's power. Defendant paid some of the notes thus given, and although he may have paid them under protest as having been given in violation of an agreement between him and his partner, his protest seems to have been only a "mental" one, as he failed to say anything about the understanding to those who had been extending accommodation to his firm.

The evidence wholly fails to show that this plaintiff had any knowledge that such an agreement existed between the partners. Plaintiff testifies that when he loaned the money, he understood it was for the use of the firm, and in this he stands uncontradicted. He denies that he had any knowledge of an arrangement by which Gregg was not authorized to execute firm notes; in this he is uncontradicted. And although Cyrus Gregg may have misapplied the funds thus obtained, still that is no defense to a suit on the notes, unless it was shown that plaintiff had knowledge that he intended to misapply them; and the fact that Cyrus Gregg did misapply the money thus obtained, if proven, either by the cash book or in any other way, would be no defense to this action. Before the defendant could avail himself of such a defense, he must show that plaintiff had knowledge that the money was to be used for some other than a partnership purpose. Parsons on Bills, 128. And however successfully the defendant may have been in impeaching Cyrus Gregg, plaintiff's evidence upon these questions stands not only unimpeached, but uncontradicted.

In the second instruction given by the court to the jury for defendant, they are told " that if they believe from the evidence that Gregg signed the name of the firm of Fisher & Gregg to the notes for borrowed money, and that Gregg had no power or right to give the firm note for any such purpose, then the

jury as to such notes must find for defendant." That instruction was, in our judgment, calculated to mislead the jury. The jury might believe that by an agreement between Fisher and Gregg, Gregg had no right to execute notes in the name of the firm, and that no recovery could be had on those notes for that reason. Yet, if the plaintiff loaned money for the purposes of the firm, and took the notes without any knowledge of the secret agreement between Fisher and Gregg, then the defendant Fisher would be liable, and the verdict should have been for the plaintiff.

With these views, the judgment of the Circuit Court must be reversed and the cause remanded.

Reversed and remanded.